## IN THE MATTER OF THE APPLICATION OF GEORGE W. MACFARLANE, FOR A WRIT OF MANDAMUS.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED SEPTEMBER 15, 1897. DECIDED SEPTEMBER 27, 1897.

JUDD, C.J., FREAR AND WHITING, JJ.

A person born in the Hawaiian Islands of British parents domiciled in this country is subject to the jurisdiction of this country and is a Hawaiian subject or citizen.

George W. Macfarlane being a Hawaiian subject, and having received a bill of sale of the British Steamship "China," is the legal owner of the said vessel within the meaning of the Hawaiian statutes on the subject of Registry of Vessels and entitled to have the said vessel registered in his name as a Hawaiian vessel.

OPINION OF THE COURT BY JUDD, C.J.

We subjoin the decision of the Circuit Judge appealed from and adopt its statement of the pleadings and of the facts found from the evidence.

"This is a petition that a writ of mandamus be issued to J. B. Castle, Collector-General of Customs, commanding him to register the Steamship 'China' in his office as a Hawaiian vessel and to issue to petitioner a certificate of such registry, the allegations of the petition being in brief: that petitioner is a Hawaiian citizen and is the sole owner of the said steamship; that on the 2d day of July last said steamship, having then a British register, was conveyed by her owner, the China S. S. Co. of London, England, to petitioner by a bill of sale of that date; that there-

upon the Hawaiian Consul in London granted to petitioner, upon application, a provisional register of said steamship as a Hawaiian vessel, and that petitioner is now the holder of said provisional register; that on the 5th day of August current petitioner surrendered to the British Consul-General in San Francisco the former British register of said steamship and caused her to be put under the Hawaiian flag; that on the 11th inst. petitioner made application to respondent for the registry of said steamship as a Hawaiian vessel, in writing and under oath and otherwise in form as required by statute; that the respondent wholly neglects and refuses to grant said application, assigning no reason for such refusal, and that the only reasons assigned by the Minister of Foreign Affairs and the Minister of Finance for refusing to allow said application to be granted, are that the Minister of Foreign Affairs has informed the United States Minister that, pending the present Treaty of Annexation, no Hawaiian registers shall be granted to any foreign built vessels and that the petitioner is not the bona fide owner and is not wholly the owner of said steamship.

"Upon the filing of the petition, an alternative writ was issued, commanding the respondent to issue to the petitioner said Hawaiian register of said steamship, or to show cause to the contrary within three days after service of the writ.

"In his return to the writ, respondent avers that he is not satisfied that no legal impediment exists to granting the register applied for, that he is informed and believes that petitioner is not the sole owner of said steamship, stating the reasons for such belief on his part, and that he is informed and believes that petitioner is not a Hawaiian citizen.

"At the conclusion of the trial herein, at which evidence was introduced on behalf of the petitioner, but none for the respondent, the latter moved to quash the alternative writ and to dismiss the petition. In support of this motion, it is contended (1) that it appears from the evidence that the petitioner is not a Hawaiian citizen, (2) that it likewise appears that petitioner is not the sole owner of the steamship, and (3) that the respondent is vested by law with discretionary power to pass upon the question of whether or not any legal impediment exists to the registry of the vessel and that consequently this court cannot, by mandamus or otherwise, interfere with the respondent's exercise of that power.

"Upon the evidence I find, as facts, that the Steamship 'China' was built in Glasgow, Scotland, in 1889, at a cost of

$740,000, which was borne by the Pacific Mail S. S. Co. of New York. When ready for sea, the title to her was placed in the name of one Donald McGregor, and upon the latter's death, it was transferred by his executors to the China Steamship Co., Ltd., an English corporation, for a nominal consideration. On the 2d of July ult., the said steamship having then a certificate of British Registry, the China Steamship Co. executed a bill of sale whereby it transferred to the petitioner herein sixty-four shares being the entirety of and in the 'China,' the consideration named in said bill of sale being the sum of Five Shillings. The China Steamship Co., possessing no other property, thereupon disincorporated. On the same day the petitioner executed and delivered to the Pacific Mail S. S. Co. a mortgage of the 'China' and all of her appurtenances and freights and earnings, for the alleged consideration of $200,000. This was the value placed upon the steamer by Lloyd's, surveyor in San Francisco. As a matter of fact, no money was paid to or by the petitioner or the Pacific Mail S. S. Co., in this transaction. Petitioner has also executed,—but whether on that same day or subsequently does not appear upon the evidence,—a power of attorney authorizing the Pacific Mail S. S. Co. to carry on the business of the steamship, and C. P. Huntington, President of said company and in its behalf, has in turn executed and delivered to petitioner an instrument in writing whereby said company agrees to save petitioner harmless from all claims and demands whatsoever in respect of said steamship.

"George W. Macfarlane, the petitioner was born in these islands in the year 1847, of British parents. His birth was recorded by his parents at the British Consulate in Honolulu in a registry containing the names of persons born here of British parents. Since the entry of his name in said registry, petitioner has not in any way claimed or renounced allegiance either to Great Britain or to Hawaii, nor has he forfeited his rights as a Hawaiian citizen. He has not at any time received any letters of denizenship or citizenship, nor taken any oath of allegiance to any government of this country.

"On the 2d July, ult., the Vice-Consul for the Hawaiian Islands in London granted to the petitioner, upon the latter's application therefor, a provisional certificate of registry of the 'China' as a Hawaiian vessel to enable the said vessel to proceed to Honolulu for the purpose of obtaining permanent registry, said provisional certificate to take effect upon the surrender to the British Consulate at San Francisco of the ship's certificate

of British registry. In accordance with this condition, the latter certificate was duly surrendered on August 5th last, and on or about that date the steamer was placed under the Hawaiian flag, and shortly thereafter proceeded to Honolulu. Upon arrival at this port, petitioner made application to the respondent for permanent registry, making oath, as required by law, that he was a Hawaiian citizen and the sole owner of the steamer, exhibiting the bill of sale and the mortgage, and complying in other respects with the provisions of the law on the subject. The Collector-General caused the vessel to be measured and her tonnage correctly ascertained and, on August 11th last, notified the Minister of Foreign Affairs of the application. On the 13th of August, said Minister wrote, in reply: 'I do not propose to make inquiry of the British Consul at this port in regard to any possible legal impediment, for the reason that it is the policy of this Government to grant no further registers to foreign built vessels excepting where such vessel may have formerly been under the American flag;' and on the same day respondent refused petitioner's application, stating as his reason for such refusal, that he was 'not satisfied, as required by law, that no legal impediment exists against the granting of such register.' These proceedings were then instituted.

"The true reason, as disclosed by the evidence, for the respondent's refusal to grant the application, was that the Hawaiian Government had assured the United States Government, through its Minister-Resident, that, pending the ratification of the Treaty of Annexation, no Hawaiian register would be given to any foreign vessels.

"Section 630 of the Compiled Laws, our only statute which defines what vessels are entitled to Hawaiian registry, reads as follows: 'No vessel shall be entitled to be registered in this Kingdom, or to be deemed a Hawaiian vessel, and entitled to the privileges appertaining thereto, unless such vessel be wholly owned by a subject or subjects of this Kingdom; provided, however, that any vessel fitted out for the prosecution of the whale or seal fishery, may be registered in the name of any part owner of such vessel, actually domiciled in this Kingdom, whether a subject or not.'

"Respondent's contention that petitioner is not a Hawaiian citizen is not sound, in my opinion. Article 17 of the Constitution of this Republic reads: 'All persons born or naturalized in the Hawaiian Islands, and subject to the jurisdiction of the Republic, are citizens thereof.' This provision is clear and un-

ambiguous and must govern. It may be that under the law of Great Britain the petitioner is also a British subject, but this cannot alter his position under our Constitution. It is not for this court to add to Article 17, limitations or restrictions which the framers of the Constitution did not see fit to insert.

"The answer to the question of whether or not the 'China' is wholly owned by the petitioner, depends upon whether or not the statute refers only to the legal ownership, to the exclusion of all equitable or beneficial interests.

"In the first place, there can be no doubt that a bill of sale is a proper and effectual instrument for the transfer of the legal title in a ship and that it is so regarded in maritime courts. Those courts determine the ownership to be in the transferee by bill of sale. See *In re The San Jose Indiana*, 2 Gall. 283; *The Sisters*, 5 Rob. 159.

"In my opinion, he is the owner of a ship, within the meaning of our statute, who is the holder of the legal title; and it matters not that he has, by agreement, deprived himself of the use and enjoyment of the property which he owns, and protected himself against liability for the expenditures or possible losses consequent upon such ownership. Even taking the view, which, I think, is sustained by the evidence, that the transfer of the title in this case was made solely for the purpose of obtaining Hawaiian registry for the vessel, and that the petitioner is practically in the position of a trustee holding the property for the benefit of the Pacific Mail S. S. Co., still, being the holder of the legal title, he is to be regarded as the owner. If it had been the intention of the legislature to prohibit trusts in this connnection, and to make it a condition precedent to the obtaining of registry that all persons equitably or beneficially interested in the ship or in its profits should be Hawaiian subjects, that intention would have been so expressed. Both in England and in the United States, the statutes concerning registry of vessels contain specific provisions on the point, that in the United States requiring an oath from the applicant that, 'there is no subject or citizen of any foreign prince or state, directly or indirectly, by way of trust, confidence or otherwise, interested in such ship or vessel, or in the profits or issues thereof.' With such a statute, there can be no doubt as to what interests are to be excluded from the enjoyment of the privileges of registry. But there would be no certainty under our statute, if it were to be held that the legislature therein referred to other than the legal ownership. For what equitable or beneficial interests would

then be held to be within, and what ones without, the provisions of the law?

"Even if, moreover, the meaning of the statute is doubtful—and that, it seems to me, is the least that can be said of it,—still the holder of the legal title must now be regarded as the owner, under the rule as to contemporaneous official construction. The evidence clearly shows that it has been the unvarying practice of the Collector-General's Department, since the enactment of the statute, to grant Hawaiian registers to the holders of the bare legal title in vessels under just such circumstances as exist in this case, or under circumstances differing only in this, to wit, that in some of those instances the transferee would give to the transferrer a charter of the vessel for 99 years instead of a mortgage and a power of attorney as in the case at bar. The construction thus given to the law by that department, while not absolutely binding upon the courts, is not to be set aside but for the very best of reasons, e. g., if such construction is *clearly* erroneous. It is to be presumed that the legislature has been aware of the construction placed upon the statute, and yet it has not seen fit to enact any amendment.

" 'The practical construction given to a doubtful statute by the public officers of the state, and acted upon by the people thereof, is to be considered; it is, perhaps, decisive, in case of doubt. This is similar, in effect, to a course of judicial decisions. The legislature is presumed to be cognizant of such construction, and after long continuance, without any legislation evincing its dissent, courts will consider themselves warranted in adopting that construction. Contemporary construction and official usage for a long period, by the persons charged with the administration of the law, are among the legitimate aids in the interpretation of statutes.'—Sutherland, Statutory Construction, Sec. 309.

See also Endlich's Interpretation of Statutes, Secs. 360, 361: *U. S. v. Johnston*, 124 U. S. 253: *Wright v. Forrestal*, 65 Wis. 348, 349; *Matthews v. Shores*, 24 Ill. 29.

"I am not prepared to say that the construction adopted by the Collector-General's Department is *clearly* erroneous. That construction should not, therefore, be disregarded or set aside.

"As to respondent's alleged discretionary power in the premises. Section 635 of the Compiled Laws reads: 'The Collector-General shall, upon ascertaining the tonnage of any vessel intended to be registered, and being satisfied that no legal impediment exists to her registry, proceed to register the same in his office, as a Hawaiian vessel, and shall issue to the applicant therefor a certificate,    *    *    *.'

"Assuming, but not deciding, that the respondent has the discretionary power of deciding whether or not any legal impediment exists, to the registry, and that the term 'legal impediments,' as used in the statute, includes fatal defects in the matters of citizenship and ownership, nevertheless the court may inquire into the question whether or not the respondent is in fact satisfied.that no such impediment exists. The respondent's statement that he is not satisfied is not conclusive. 'The fact that one is sole judge does not authorize him to act whimsically or in bad faith. The very term 'judge' implies fairness of action and the exercise of one's judgment, not mere whim or will. The jury in such case may inquire into the existence, but not the reasonableness, of the dissatisfaction.'—*Rawlins v. Soap Works*, 9 Haw. 266. Upon the evidence, I believe that the true reason for the refusal of registry is not that the respondent is 'not satisfied that no legal impediment exists to the registry,' but that the Hawaiian Government has given to the United States Government the assurance above mentioned.

"The petitioner having in all respects complied with the law, is entitled to the certificate of registry applied for. The motion to quash the writ and dismiss the petition is denied. Let a peremptory writ issue."

Three questions are raised by the appeal. (1) Is the petitioner for the writ a Hawaiian subject and as such entitled to have the Steamship "China" registered in his name as a Hawaiian vessel? (2) Is he within the statute wholly the owner of the Steamship "China"? (3) Can the court go behind the discretion of the Collector-General (if any he has) in his statement that he declines to admit the Steamship "China" to registry, because he is "not satisfied that no legal impediment exists to her registry" ?

Upon the first question we have no doubt. Article 17 of our Constitution defines Hawaiian citizenship as follows: "All persons born or naturalized in the Hawaiian Islands, and subject to the jurisdiction of the Republic, are citizens thereof." Mr. Macfarlane was born in the Hawaiian Islands. His parents were British subjects and were domiciled here. His father died here. It is claimed that he was not subject to the jurisdiction of the Government of this country because he was registered at birth

at the British Consulate and had never either renounced his allegiance to the British Crown nor taken any oath of allegiance to the Government of this country.

Whatever may be the views of the British authorities as to Mr. Macfarlane's status, it does not control us, and we must decide the question according to our own law even though it involves a dual allegiance. Fortunately the Constitution of the Republic in the article above quoted gives a definition which puts, so far as this Court is concerned, many disputed questions at rest.

The Fourteenth Amendment of the Constitution of the United States has precisely similar language in defining citizenship in that country. An almost unbroken chain of decisions from the time of the final adoption of the amendment (in 1868) to the present time interprets the language that would establish Mr. Macfarlane's status to be that of an Hawaiian subject. The question discussed in the cases we shall cite, is on the meaning of the words "subject to the jurisdiction thereof." It has been contended that it excludes, as those not subject to the jurisdiction of Hawaii, those who have a foreign father not naturalized, the nationality of the child following that of his father, as well as children of those engaged in a diplomatic capacity in the country where the birth has taken place. The first case we refer to is *In re Look Tin Sing*, Habeas Corpus, 21 Fed. R. 905, where the Circuit Court of the United States of the District of California held by Field, Justice, Sawyer and Sabin, JJ., decided that "a person born within the United States of Chinese parents residing therein and not engaged in any diplomatic or official capacity under the Emperor of China, is a citizen of the United States. Persons are subject to the jurisdiction of the United States who are within their dominions and under the protection of their laws with the consequent obligation to obey them when obedience can be rendered."

The head note of *Ex parte Chin King*, 35 Fed. R. 355, per Deady, U. S. District Judge, is "A child born in the United States of Chinese parents is by the rule of the common law and

the fourteenth amendment a citizen of the United States and when restrained of its liberty of locomotion therein may be delivered therefrom on *Habeas Corpus*." This principle was affirmed by the same Judge in *Young Sing Hee's* case, 36 Fed. R. 437.

United States District Judge Hanford of the North District, California, in *Gee Fook v. The United States*, 49 Fed. R. 147, held that under the fourteenth amendment to the constitution the laws excluding immigrants who were Chinese laborers were inapplicable to a person born in the United States and subject to its jurisdiction, even though his parents were not citizens, and, being Chinese, were not entitled to be naturalized.

The last case we cite, from the United States courts, was decided January 3, 1896. It is *In re Wong Kim Ark*, 71 Fed. R. 382. Here Judge Morrow held that a person born within the limits of the United States whose father and mother were both persons of Chinese descent and subjects of the Emperor of China but, at the time of the birth, were both domiciled residents of the United States, is a citizen of the United States within the meaning of the 14th amendment to the constitution of the United States.

This exact question arose also in New Jersey where the election of one Allan Benny to a seat as councilman in a city of New Jersey was contested on the ground that he was not a citizen. The Supreme Court of that State held that persons born in the United States who are domiciled there and consequently subject to its jurisdiction are citizens of the United States and of the State where they reside. Children born of persons residents here in the diplomatic service of foreign governments are excepted. *Benny v. O'Brien*, 58 N. J. L. 36.

The only cases of the United States courts cited against this view are the famous *Slaughter Houses Cases*, 16 Wallace 36, and *Elk. v. Wilkins*, 112 U. S. 94.

The expression in the Slaughter House cases relied upon is this: "The phrase 'subject to its jurisdiction' (in the 14th amendment), was intended to exclude from its operation chil-

dren of Ministers, Consuls and citizens or subjects of foreign states born within the United States." Judge Morrow in *Wong Kim Ark. supra*, in an elaborate and well considered opinion, shows conclusively that the above expression, apparently excluding from citizenship children born in the United States of foreigners, was *obiter dictum* and not of the issue in the case. Evidently Mr. Justice Field who presided in the case of *Look Tin Sing*, 21 Fed. R., did not consider that the expression in 16th Wallace, relied upon by the respondent was inconsistent with the decision then made.

In the case of *Elk v. Wilkins*, 112 U. S. 94, the majority of the court held that an Indian born in the United States though he had separated from his tribe and lived in a civilized community, was not a citizen of the United States unless he had been naturalized or taxed or had been recognized as a citizen of the United States or of a state. As the relation of Indians to the United States is peculiar and they stand by themselves as a class the general principle of nationality of birth is not disturbed.

The 21st Fed. R. case has been followed so consistently by all the Federal courts of the United States, the exact question not having as yet been passed upon by the Supreme Court of the United States, we may consider that it is the settled law of the United States that children born in the United States of alien parents are subject to the jurisdiction of the United States and are citizens thereof. This is our view. Mr. Macfarlane says he has always considered himself to be an Hawaiian citizen and has not to his recollection ever claimed himself to be a British subject. He has held office under the Hawaiian Government which presupposes his taking an oath of allegiance to this country. This however, does not make him any more an Hawaiian than he was by birth, his parents being domiciled here.

The next question is one of more difficulty. The first section of the statute controlling the registry of vessels is Section 630 of the Civil Code (Comp. Laws, p. 179): "No vessel shall be

entitled to be registered in this Kingdom (Republic) or to be deemed a Hawaiian vessel, and entitled to the privileges appertaining thereto, unless such vessel be wholly owned by a subject or subjects of this Kingdom" (Republic) and then follows a provision allowing Hawaiian registers to vessels fitted out for the whaling or seal fishery to a part owner being a domiciled resident though not a subject of Hawaii.

Is the Steamship "China" "wholly owned" by Mr. Macfarlane? His name alone appears on the bill of sale. He has by this document the entire legal title of the vessel. By other papers in evidence he has parted with the possession of the vessel. She is in the hands of the Pacific Mail S. S. Co. of New York. They are mortgagees in possession, pay her expenses and receive her earnings. Supplies to the vessel will undoubtedly be on the credit of the company, they holding themselves out as responsible. But if she should be chartered or sold, the instruments would have to be executed by the owner Mr. Macfarlane. Chancellor Kent says: "The title of a ship acquired by purchase passes by writing. A bill of sale is the true and proper muniment of title to a ship and one which the maritime courts of all nations will look for and in their ordinary practice require."—3 Kent's Com. Sec. 130.

Parsons in 2 Pars. Mar. Law, 522, says: "It has been held in Admiralty in England that a party holding a regular bill of sale of a ship has the legal title, and is entitled to the possession of it against any asserted equitable claim in others. The general maritime law requires such a document (bill of sale) as the proper muniment of the title of a ship."—*Weston v. Perriman*, 1 Mason, 316.

There are no "part owners." Mr. Macfarlane's bill of sale from the "China Steamship Co." a British corporation, has passed the entirety, sixty-four shares, of the vessel, to him. It does not appear that the Pacific Mail S. S. Co. ever had a paper title to the vessel, though it is undoubtedly true that the corporation, the China Steamship Co., was incorporated ·to hold the title of the steamer in the interest of the Pacific Mail S. S.

Co., she being a British built vessel, her construction being paid for by the Pacific Mail S. S. Co.

The Court of Queen's Bench held that a British corporation may be registered as the owner of a British built vessel, notwithstanding some foreigners may individually have shares in the company. *Regina v. Arnaud & Powell,* 9 Ad. & El. n. s. 806. The court held that the corporation was the *sole owner* of the vessel. The statutes of the United States respecting registry of vessels differ widely from the Hawaiian statutes. The United States have not only to protect the commerce of its citizens, but its ship-building interests, and so the laws are exceedingly strict, not only requiring proof of entire legal ownership of the vessel by bona fide citizens of the United States, but that she was built in that country. But as says Mr. Justice Story in a note to Sec. 68 of 1 Abbott on Shipping, "There is nothing in our ship Registry Acts, which prevents one citizen from being the legal owner, and taking the usual oath, and there being a good subsisting equitable title in another citizen. The oath required by our Act to be taken by the owner respects only the legal ownership, and does not require a disclosure of equitable interests vested in other citizens." The United States statute has further requirements and, as says Story, continuing, they require a "denial that any foreigner is directly or indirectly interested by way of trust, confidence or otherwise in the ship or in the profits or issues thereof." This provision does not exist in the Hawaiian statute. The statutes of both countries require only the *legal ownership* to appear on the register; the United States statutes require also evidence that no foreigner is interested in the vessel. The Hawaiian statute does not. The view that a register may be given in the name of a Hawaiian holder of the legal title without inquiry if the beneficial interest in the ship is held by foreigners has always obtained in this country and has never been disputed until this case. Numbers of foreign vessels have obtained Hawaiian registers upon a transfer of the legal title to a Hawaiian citizen, and we give great weight in a doubtful case to the con-

temporaneous and unvarying construction put upon this statute by all persons dealing under it. This was our view in *Telephone Co. v. Telephone Co.,* 5 Haw. R. 460; *Minister of Interior v. Papaikou Sugar Co.,* 8 Haw. 128; *Hilo Sugar Co. v. Mioshi id.* 204, and is well sustained by the authorities in those cases cited.

We pass now to the last point made in defense, that the respondent, the Collector-General, has answered that he is not "satisfied that no legal impediment exists to granting a Hawaiian register to the Steamship 'China,' and that the action of the Collector-General in refusing the register was discretionary and cannot be compelled by the Court." The plain answer to this argument is that the respondent has not in his return contented himself with this position but has proceeded to allege two grounds, (1) of non-citizenship of the petitioner, and (2) his non-whole-ownership of the vessel. We infer from this that these are the "legal impediments" which he alleges exist against the proposed registry, and as he has submitted these to the judgment of the court and making no suggestion of any other legal impediment we infer that no further grounds for dissatisfaction exist in his mind. Having held against the respondent on these alleged "impediments" we deem it unnecessary to go into the law governing the action of the courts where an act sought to be compelled is discretionary, not however, conceding that the statute vests discretion in the Collector-General.

It may be said that to order the register in question to issue would defeat the object of the statute in restricting the privilege of registry to vessels wholly owned by Hawaiian subjects. What is the object of the statute? Not to protect the ship-building industry. We have practically none. The object so far as we can ascertain it, is to advertise our flag in foreign seas —a sentimental one—and the practical one, of securing taxes upon the value of these vessels, which is secured by their being owned by Hawaiian subjects.

We affirm the decision of Circuit Judge Perry, and dismiss the appeal.

*A. S. Hartwell* for the petitioner.

*H. E. Cooper* for the respondent.