## LINCOLN D. SPENCER v. F. B. McSTOCKER, Collector-General of Customs.

### MANDAMUS.

SUBMITTED SEPTEMBER 30, 1898.   DECIDED NOVEMBER 4, 1898.

JUDD, C.J., WHITING, J. AND R. D. SILLIMAN, ESQ., OF THE BAR, IN PLACE OF FREAR, J., ABSENT.

(1) Upon the refusal of the Collector-General of Customs to register a vessel under Chapter XXXII., Laws 1898, the applicant may apply to a judge of the Circuit Court for a writ of mandamus directing that registry of such vessel be made. Such application is not a suit upon a claim against the Hawaiian government, and the Circuit Judge has jurisdiction of the subject matter thereof.

(2) The registry of vessels is a domestic privilege conferred upon Hawaiian citizens by municipal legislation of the Republic, and is not inconsistent with the joint resolution accepting the cession of the Hawaiian Islands, nor contrary to the Constitution nor any existing treaty of the United States.

OPINION OF THE COURT BY R. D. SILLIMAN, ESQ.

This is an appeal from a pro forma decree of the First Judge of the Circuit Court of the First Circuit, sustaining a demurrer to the applicant's petition for an alternative writ of mandamus and dismissing the alternative writ issued thereon between September 22, 1898. The Petition shows that Lincoln D. Spencer is a native born citizen of the Republic of Hawaii; that on July 2, 1898, he became sole owner of the ship "Star of Italy" by purchase; that on the same day a certificate of temporary Hawaiian Registry of said vessel was issued by the Hawaiian Consul

at Seattle, in the State of Washington; that on August 3, 1898, formal application was duly made by said Spencer to the Collector-General of Customs at Honolulu for Registry as an Hawaiian vessel, and that the required oath of the owner and the bill of sale setting forth how said vessel was acquired were included in the application; that said application was refused by said Collector-General of Customs because he was of the opinion that no Hawaiian Registers could at that time be issued. The petition further alleges that the said vessel was at the time of filing said petition in the port of Honolulu, and that all the requirements of the Hawaiian laws and of the office of the Collector-General of Customs were duly complied with, and that plaintiff has no adequate remedy at law.

The grounds of demurrer are:—(1) That the Court has no jurisdiction of the subject matter of the action, the same being a claim against the Hawaiian Government; (2) That there is a defect of the party defendant; and (3) That the petition does not state facts sufficient to constitute a cause of action. Upon the argument the second ground was waived except in so far as it was included in the first. We are of the opinion that the application for a writ of mandamus was the applicant's only proper and adequate remedy upon the facts alleged in the Petition. The Judges of the Circuit Courts in Chambers have authority to issue writs of mandamus directing public officers to fulfill any of the duties attached to their offices, or which may legally be required of them. An officer of the government has declined to do an act alleged to be attached to his office and that may be legally required of him and it is further shown that the refusal of such officer to do such act constitutes an injury for which the applicant has no other remedy. Manifestly if the Petition sets forth a sufficient cause of action the applicant is entitled to the writ unless Act XXVI, of the Laws of the Republic, Session of 1895 takes from the Circuit Court jurisdiction to issue the writ against the Collector-General of Customs on his refusal to grant an application for a vessel register. The defendant contends that this application for a writ of mandamus is a suit on a claim against the Hawaiian Government and

so out of the jurisdiction of the Judges of the Circuit Court. Act XXVI of the Laws of the Republic of 1895 (Civil Laws, 1897, p. 590), is a remedial Statute enacted to avoid the injustice of the doctrine that a state cannot be sued in its own Courts without its consent. It does not extend to any causes involving an investigation of equitable rights, nor to any claims arising under the revenue laws. It has reference only to such claims for the recovery of money as are particularly specified. See *Garland & Ralston Federal Practice*, Chap. XVI, Section 377, *et seq.*, where there is a full discussion of a similar act of the United States Congress. We are of opinion that the cause of action stated in the Petition does not come within the purview of the Statute.

The third ground of demurrer rests upon the assumption that the Republic of Hawaii has ceased to exist as an independent nation, that it has no national flag and no authority to register vessels and issue certificates of such registration. This Government by treaty negotiated at Washington June 16th, 1897, tendered to the Government of the United States of America, all rights of sovereignty of whatsoever kind in and over the Hawaiian Islands and their dependencies, and the absolute fee and ownership of all the public Government or Crown Lands, public buildings or edifices, ports, harbors, military equipments and all other public property of every kind and description belonging to this Government together with all rights thereto belonging. This tender was accepted on the 6th day of July, 1898, by the United States Government in the form of a joint resolution of Congress popularly known as the Newland's Resolution. The cession of this Government was accepted, ratified and confirmed, and the Hawaiian Islands, and their dependencies were by said Resolution declared to be a part of the territory of the United States and subject to the sovereign dominion thereof. It was further resolved that until Congress provided for the Government of the Islands, all the civil, judicial and military powers exercised by the officers of the existing Government should be exercised in such manner as the President of the Unit-

ed States should direct, and the President was given power to remove any officers and fill the vacancies so occasioned. Existing Treaties of the Hawaiian Islands with foreign nations were declared determined, and it was provided that "the municipal legislation of the Hawaiian Islands not enacted for the fulfillment of the Treaties so extinquished and not inconsistent with this Joint Resolution nor contrary to the Constitution of the United States nor any existing Treaty of the United States shall remain in force until the Congress of the United States shall otherwise determine." The existing Customs relation of the Islands with the United States and other countries was not changed. These are all the provisions of said Resolution that are material to the decision of this Appeal.

On August 12th, 1898, the formal raising of the flag took place and President McKinley through the American Minister, Harold M. Sewall, directed that the powers of the officers of the existing government should continue vested in such officers, but requiring an oath of allegiance to the United States, and further directed in language similar to that of the Resolution, that the municipal legislation of Hawaii should remain in force till the Congress of the United States should otherwise determine.

Until the Resolution of July 7th, 1898, was signed by the President of the United States, the Republic of Hawaii possessed all the attributes of sovereignty and held an acknowledged rank among all nations as an independent Republic. On the consummation of Annexation all the rights of sovereignty were relinquished by the Republic and granted to the United States. But these powers could not be enforced by the Federal Government without special legislation for that purpose and therefore during the period taken by the Federal Government to perfect a new system all the functions of Government remain to be exercised by the existing Republic. On August 12, 1898, the Government at Washington undertook to conduct all diplomatic intercourse in behalf of the Republic of Hawaii, and assumed the responsibility of its relations with foreign powers,

but this is as far as it has extended its system over these Islands. All the other rights and duties of an independent State must be enforced through the machinery of Government established here and in operation on that day. It was so held in *Republic of Hawaii v. G. L. Edwards*, 11 Haw. 571, *ante.*

Prior to July 7th, 1898, any citizen of the Republic of Hawaii might have purchased a vessel and on complying with the requirements of law have had the same registered as an Hawaiian vessel, and thereupon have procured a license and engaged in coasting or inter-island trade, and without obtaining such registry such license could not be obtained, and without such license any vessel engaging in coasting trade was liable to seizure, confiscation and sale for the benefit of the Republic. Civil Code, page 16. Defendant contends that this right passed away when the Hawaiian flag was lowered and replaced by the American flag, on the ground that the Republic of Hawaii thereupon ceased to exist as an independent nation and without separate nationality cannot issue certificates of registry to, seagoing vessels.

In international law ownership is the basis on which the nationality of a vessel rests. The ownership is evinced primarily by the bill of sale but a certificate of a consul that the vessel is owned by one of the subjects of the country he represents or a like certificate by the proper executive officer of such country will be accepted as a sufficient assurance of her nationality.

3 Wharton's International Law Digest Sec. 410.

Foreign-built ships are not entitled to the municipal privileges given by statute to registered vessels of the United States but that they are entitled to the same protection from the government when owned by American citizens was declared by Thomas Jefferson in 1793 and has been conceded ever since.

The privileges conferred upon registered vessels are conferred exclusively by legislation. They do not arise by virtue of the Law of Nations but rest wholly on municipal enactment. Whatever may be the extra territorial standing of registry acts, they are, within the limits of the country enacting them, the law of the land if constitutional.

It is not an essential prerequisite to the Registry of the Vessel that the Minister of Foreign Affairs communicate to the Collector-General of Customs the reply of an accredited representative or consul of the nation to which the vessel formerly belonged, as to the existence of an impediment. If there is no such representative or consul the statute does not require it and if there is his certificate would be the mere expression of his opinion and of no more value than his certificate of any other fact. *Church v. Hubbart,* 2 Cranch 187.

We are of opinion that the Registry law is municipal legislation and is not inconsistent with the Newland's Resolution. We are also of opinion that it is not in violation of the constitution of the United States or any of its treaties. Our attention has not been called to any American treaty that will be violated and we know of none that can be in any way affected by the granting of the registry applied for. The constitution of the United States provides that Congress shall have power to regulate commerce with foreign nations and among the several States and with the Indian Tribes. But this does not prohibit the existing government of newly acquired territory from enforcing municipal legislation regulating its commerce until such time as the Congress of the United States shall provide needful legislation in place thereof. Congress has always recognized this right in the existing government of a Territory but it has also so framed its subsequent legislation that no evasion of the American Registry laws may be effected thereby. As an illustration the Territory of Alaska was acquired from Russia by treaty negotiated March 30th, 1867. July 27th, 1868, Congress passed a law providing that the Secretary of the Treasury was authorized to register all vessels owned by actual residents of that Territory on June 20th, 1867 and which continued to be so owned up to the date of such registration. See *Macfarlane v. Collector of Customs,* 11 Haw. 166, *ante.*

The demurrer should be overruled.

*Kinney & Ballou* for plaintiff.

*Deputy Attorney-General E. P. Dole, Esq.* for defendant.