IN THE MATTER OF THE APPLICATION OF L. D. SPENCER FOR A WRIT OF MANDAMUS AGAINST F. B. McSTOCKER, COLLECTOR GENERAL OF CUSTOMS. (Case of the "Euterpe.")

IN THE MATTER OF THE APPLICATION OF G. W. MACFARLANE FOR A WRIT OF MANDAMUS AGAINST F. B. McSTOCKER, COLLECTOR GENERAL OF CUSTOMS. (Case of the "Willscott.")

IN THE MATTER OF THE APPLICATION OF A. M. BROWN FOR A WRIT OF MANDAMUS AGAINST F. B. McSTOCKER, COLLECTOR GENERAL OF CUSTOMS. (Case of the "Falls of Clyde.")

APPEALS FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED APRIL 3, 1899.          DECIDED JUNE 5, 1899.

JUDD, C.J., FREAR AND WHITING, JJ.

Upon petitions, returns and motions to quash the returns in mandamus preceedings, it was held (1) that the defenses set out in the returns were not inconsistent; (2) that at least one of the defenses was not impertinent or frivolous; (3) that certain defenses were not set forth with sufficient definiteness and certainty and (4) that a denial in the return was sufficient though made on information and belief.

The Collector General of Customs is not subject to the directions of the Minister of Finance in the matter of the registry of vessels.

The refusal of the Minister of Finance to inquire of the representative of the nation to which a foreign-built vessel belongs,

whether any legal impediment exists to her registry, does not prevent the Collector General of Customs from proceeding to register the vessel as a Hawaiian vessel.

The registry laws of Hawaii were not abrogated immediately upon the annexation of these islands to the United States.

### OPINION OF THE COURT BY FEAR, J.

These are applications for writs of mandamus to compel the respondent to issue certificates of registry for the vessels "Euterpe," "Willscott" and "Falls of Clyde" respectively.

The case of the "Euterpe" is thus stated in the decision of the Circuit Judge:

"Petitioner alleges in his petition that he is a Hawaiian citizen, and the sole, actual and bona fide owner of the ship called the 'Euterpe,' now lying in the port of Honolulu, that said vessel is foreign built and was acquired by petitioner by purchase and that there is no citizen or subject of any foreign prince or state, directly or indirectly, by way of trust, confidence or otherwise, interested in such vessel or in the profits or issues thereof; that on July 2nd, 1898, while the 'Euterpe' was lying at the port of Newcastle, N. S. W., he did, at Seattle, Wash., apply to and receive from the Hawaiian Consul at said city a temporary register of said ship as a Hawaiian vessel; that on August 3rd, 1898, he, the petitioner, made formal application to the respondent for a Hawaiian register for said ship and that subsequent to the making of said application, he made, subscribed and presented to respondent, his affidavit as required by law together with his bill of sale of the ship and the temporary register above mentioned; and that on December 29th, 1898, respondent refused and still refuses to issue a Hawaiian register for said ship. Copies of the bill of sale, temporary register, deposition of the owner made before the Hawaiian Consul at Seattle on July 2nd, 1898, affidavit of the owner sworn to before a notary public in the same city on the same day, and the application for a register and answer thereto, are appended to and made a part of the petition.

"Respondent in his answer says:

1. 'That he is not satisfied that no legal impediment exists to the registration of said ship 'Euterpe,' as a Hawaiian vessel.

2. 'That said application presented to him is insufficient in form and substance to warrant him in proceeding to register said ship 'Euterpe' as a Hawaiian vessel.

3. 'That said oath presented with said application to him is insufficient in form and substance to warrant him in proceeding to register said ship 'Euterpe' as a Hawaiian vessel.

4. 'That he denies on information and belief that said ship 'Euterpe' is wholly owned by said petitioner, Lincoln D. Spencer, and that there is no citizen or subject of any foreign prince or state directly or indirectly by way of trust, confidence or otherwise, interested in said vessel or in the profits or issues thereof.

5. 'For a further and separate answer he alleges that he has been directed by the Minister of Finance to refuse to proceed to the registration of said ship 'Euterpe' as a Hawaiian vessel, and that said Minister of Finance is his superior officer and that he is subject to the direction of the said Minister.

6. 'For a further and separate answer he alleges that the Minister of Foreign Affairs has informed him that he will decline to inquire of the representative of Great Britain now resident in the Hawaiian Islands whether any legal impediment exists to the registry of said ship 'Euterpe' as a Hawaiian vessel, and that without said information he cannot proceed to the registration of said ship.

7. 'For a further and separate answer he alleges that since the 12th day of August, 1898, he has possessed no power or authority to register any vessel as a Hawaiian vessel in that the laws of the Republic of Hawaii heretofore existing respecting the registration of vessels became inconsistent with the Joint Resolution of the Congress of the United States of America approved the 7th day of July, 1898, and proclaimed as the law of the land in such cases on said 12th day of August.'

"Petitioner files a motion to quash this answer on the following grounds:

'1st. For that said answer does not set up a sufficient excuse for non-performance.

'2nd. For that said answer is frivolous and evasive.

'3rd. For that said answer sets up inconsistent defenses.

'4th. For that said answer is ambiguous and uncertain, for that among other reasons, it does not state (1) the grounds of dissatisfaction that no legal impediment exists to the registra-

tion of said ship 'Euterpe' as a Hawaiian vessel. (2) That it is not shown how and in what manner the application of petitioner is insufficient in form and substance. (3) That it is not shown how and in what manner the oath presented with said application is insufficient in form and substance. (4) That it is not shown what oath is insufficient in form and substance.' "

The Circuit Judge overruled the petitioner's motion to quash the return, on the ground that the respondent's denial of petitioner's sole-ownership was sufficient to present an issue of fact to be tried.

In the "Wilscott" case, the petition, return and motion to quash were similar to those in the "Euterpe" case, and the motion to quash was overruled on the same ground.

In the "Falls of Clyde" case, the petition was similar to that in the "Euterpe" case, but the return set up only three excuses for non-performance, namely, the 1st and 7th set forth in the "Euterpe" case and one corresponding to the 4th set out in that case but worded differently as follows:

"That he is not satisfied that the said ship "Falls of Clyde" is wholly owned by the petitioner, Arthur M. Brown, and that there is no citizen," &c.

The Circuit Judge held that this was not a positive and direct denial of the material fact stated in the petition and was insufficient, and accordingly he sustained the motion to quash the return, but, upon motion, permitted respondent to amend his return, and then overruled a motion to quash the amended return.

The several petitioners appealed.

We shall consider only the points raised in argument in this court.

First, that the defenses are inconsistent. It seems to us that the defenses are cumulative rather than inconsistent. Even if they were inconsistent the Judge might in his discretion have stricken out some and allowed others that were consistent to stand.

Secondly, that the returns are impertinent and frivolous. The denial in each case that the petitioner is sole owner of the vessel is certainly neither impertinent nor frivolous.

Thirdly, that the return is indefinite, ambiguous and uncertain. This argument is directed at the first three defenses set out in the return. A glance at these allegations of the return will show that they are too indefinite and uncertain to be sustained—unless the first could be sustained on the ground that an allegation of the fact that the Collecter General was not satisfied that no legal impediment existed was sufficient and that his decision could not be reviewed by the courts, but that question was disposed of in the case of the "China," 11 Haw. 178.

Fourthly, that the denial of petitioner's sole-ownership on information and belief is insufficient. No other objection is made to the form of this allegation of the return. It is contended that a denial on information and belief is uncertain because the petitioner might in fact be sole owner even though the respondent should be informed and should believe that he was not and that therefore there is no positive direct denial of the petitioner's corresponding allegation. The petitioners rely on Missouri and New York cases. The Missouri cases are *State v. Williams*, 96 Mo. 13, 18, and *State v. Trammel*, 106 Mo. 510, 515. In the second of these cases it does not appear just what the form of the denial was; it is merely said by the court to have been on information and belief; no objection was made by counsel to that form of pleading and the court allowed it to stand as the reply seemed to confess the facts so pleaded. The *dictum* of the court that a denial on information and belief was insufficient because it was not "direct and positive" was based on the earlier case entirely. Now turning to the earlier case, we find that the averment was not, as in the present case, a direct and positive denial, on information and belief, of the fact alleged in the petition, but merely an averment that the respondent had "no knowledge or information sufficient to form a belief" one way or the other; also that the statements in the authori-

ties relied on by the court, to the effect that denials in the return must be positive and direct, were, as pointed out by the Circuit Judge in this case, made with reference to the distinction between such denials and those merely by way of inference and not with reference to the distinction between denials on one's own knowledge and those on information and belief.

The New York cases are *People v. Norton,* 12 Abb. Pr. N. S. 47, 87, and *People v. Common Council,* 77 N. Y. 503, 511. In the second of these cases the averment is merely that respondent "is informed and believes that," &c., not as in the present case a positive denial, "on information and belief." The respondent may be informed and may believe that an alleged fact is not true and yet the alleged fact may be true; such an allegation differs from a positive denial of the truth of the alleged fact accompanied with a statement as to the source of the knowledge. An averment of information and belief differs from an averment on information and belief. The usual practice is to aver in both ways, as: "The respondent is informed and believes and so avers on information and belief the fact to be," &c. The opinion on this point in this second New York case is based on the earlier New York case. Turning now to the earlier case we find that the averment there is similar to that in the later case, namely, that respondent "is informed and believes," &c. and not, as in the present case, a positive denial accompanied by a statement that the source of knowledge is "information;" also that the decision was based, not merely upon the fact that the averment in the return was on information and belief but largely on the vagueness and generality of the whole averment as compared with the directness and particularity of the averments of the petition.

In a later New York case, *People v. York,* 52 N. Y. Supp. 401, the form was as in the case at bar, "upon information and belief." There were both denials and affirmative allegations. The court relied on the case in 77 N. Y. 503, above referred to, and held that the reasoning that was applied in that case to de-

nials applied equally to affirmative allegations on information and belief. No distinction was noticed between the form of the averments in the two cases, but the court evidently felt that there was need of some qualification to the general rule laid down in the earlier cases and added the following:

"In order to prevent any misconstruction, it should be added that the rule which renders denials on information and belief thus unavailing in mandamus proceedings does not, as we understand it, go so far as to condemn them under all circumstances. There may be cases where a public officer or other party proceeded against cannot possibly have any cognizance of the subject-matter except such as is based upon communication from others. No court, we believe, would hold that a denial or affirmative allegation coming from one so situated must be diregarded because made on information and belief, if it satisfactorily appeared that the witnesses possessing personal knowledge of the matter were inaccessible, and if the affiant stated such sources of information and grounds of belief as to convince the court of the existence of a substantial defense."

Afterwards on a motion for reargument the court said they had no doubt the order granting the writ would be vacated upon proper conditions and the respondents be permitted to replace their affidavits with others drawn in accordance with the suggestions made in the opinion of the court. 52 N. Y. Supp. 1060.

The respondent relies on *People v. Alameda County*, 45 Cal. 395 and *State v. Cooley*, 58 Minn. 514, 518. In the first of these cases there was a denial, as in the case at bar, "upon information and belief." The court sustained the pleading and overruled a motion to strike it out. In the Minnesota case counsel cited the Missouri and New York cases, but the court sustained the allegations made on information and belief, saying, among other things:

"The respondent contends that denials upon information and belief are not permissible in a return to a writ of mandamus, especially when made by a county officer having no personal interest in the controversy. Several of the allegations in the return which are pleaded as an affirmative defense are stated up-

on information and belief. If this form of pleading is permitted, it seems to us that a public officer should certainly be allowed to do so. Many facts might exist, and transactions take place, of which he could not have the means of knowing personally or positively, and to which he in no way was a party, and of which it would be difficult for him to obtain a positive knowledge, especially without spending much time for such purpose, and which might greatly interfere with the faithful discharge of his official duties. He might be informed of such alleged facts or transactions which he believed to be true, and it would seem to be unjust that he should be deprived, through some technicalities or mere matter of form, from alleging their existence upon information and belief."

*        *        *        *        *        *

"A conscientious and honest man or public officer should not be deprived of his substantial rights because he feels that he can only truthfully allege the existence of certain facts, substantiating those rights upon information and belief. However sincerely he may believe in the existence of such facts, yet, not knowing with absolute certainty of their existence, he should be permitted to allege such facts upon information and belief, and not be driven out of court because he would not utter a falsehood or commit perjury."

It seems to us that this reasoning is sound. We may add that the rigor of the ancient common law rule which required certainty to a certain intent in every particular in returns to alternative writs of mandamus has been relaxed and now certainty to a certain intent in general is all that is required and it has been held that such certainty as suffices in other proceedings is sufficient in mandamus proceedings. High, Extr. L. Rem. Sec. 471. Such has been the prevailing view here as shown in our practice. There is nothing in our statutes that forbids a denial on information and belief in a return.

If we were to adopt the rule of extreme strictness we should be obliged to look back of the return to the petition and writ in two of these cases at least. For, in the first place, we find in the books general statements in regard to the petition similar to those in regard to the return in respect to the degree of pos-

itiveness and distinctness required and it appears to have been held that an affidavit that the matters set forth in the petition are true to the best of affiant's knowledge, information and belief is insufficient (see *Gunning v. Sheahan*, 73 Ill. App. 118, not at hand but digested in 6 Gen. Dig. 1440), and yet in the first of the cases before us the allegations of the petition are sworn to on information and belief. Again, the return is supposed to be an answer to the alternative writ only, and yet there is no allegation or recital in the alternative writ, in either of the first two cases in regard to the matter of sole-ownership, such matter appearing in the petition only.

In our opinion a positive and direct denial, though on information and belief, is sufficient under the circumstances of the present cases.

We now pass on to the remaining three defenses set up in the return.

First, that the respondent has been directed by the Minister of Finance to refuse to register the vessels and that he is subject to the direction of the said Minister as his superior officer. The answer to this is that the statute does not make the Minister the superior officer of the Collector General in the matter of registration of vessels, although it does for some other purposes.

Secondly, that the Minister of Foreign Affairs has informed the respondent that he will decline to inquire of the representative of Great Britain now resident here whether any legal impediment exists to the registry of the vessels. This is answered by the reasoning in the "Star of Italy" case 11 Haw. 581.

Thirdly, that the registration laws of these islands were inconsistent with the Joint Resolution of Congress, approved July 7, 1898, under which these islands were annexed to the United States. This point also was disposed of in the "Star of Italy" case, *supra.*

Chancellor Kent (3 Com. 149) says: "The registry is not a document required by the law of nations as expressive of a ship's national character. The registry acts are to be considered

as forms of local or municipal institutions, for purposes of public policy." The Hawaiian registration laws are a part of the municipal legislation of these islands which was to remain in force temporarily by the terms of the Joint Resolution of annexation. The main purpose of registry laws is to encourage the trade, navigation and ship-building of the country enacting such laws,—not to impress vessels with a national character or to entitle them to protection as national vessels. Congress manifested no particular intention to abrogate our registry laws immediately upon annexation. On the contrary by continuing Hawaiian customs relations with the United States and other countries, it manifested a general intention to continue our registry laws. It certainly did not intend to annual the registers of all vessels then registered under our laws. The registration of other vessels thereafter would not make them American vessels or entitle them to the privileges of American vessels.

In our opinion, the denials of the respective petitioners' sole-ownership are sufficient in form under the circumstances of these cases, and the decrees of the Circuit Judge overruling the motions to quash the returns are affirmed.

*Kinney, Ballou & McClanahan* for the petitioner in the "Euterpe" case.

*Thurston & Carter* for the petitioners in the "Willscott" and "Falls of Clyde" cases.

*Attorney General H. E. Cooper* for the respondent in each case.